**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 19, 2014
Date Decided: June 25, 2014

Richard M. Beck
Sean M. Brennecke
Klehr Harrison Harvey Branzburg LLP
919 Market Street, Suite 1000
Wilmington, Delaware 19801

Richard P. Rollo
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899

Re:   *Laidler v. Hesco Bastion Environmental, Inc.*
      Civil Action No. 7561-VCG

Dear Counsel:

On May 12, 2014, I issued a Memorandum Opinion in this appraisal action, in which I determined that the fair value of one share of Hesco Bastion USA, Inc. ("Hesco") as of the valuation date was $364.24, but invited the parties to bring to my attention any calculation errors made in my value determination.[1] On May 23, 2014, the Petitioner submitted her "proposed computational corrections," in which she raised my failure to consider applying a mid-year convention to the direct capitalization of cash flow method of calculating Hesco's value, a method which both experts employed and which I accordingly adopted. The Petitioner's expert

---

[1] *Laidler v. Hesco Bastion Envtl., Inc.*, 2014 WL 1877536, at *14 (Del. Ch. May 12, 2014).

had, in fact, applied a mid-year convention in his value calculation; the Respondent's expert had not.

In opposing this proposed correction, the Respondent first argues that this issue should have been raised, if at all, by filing a motion for reargument under Court of Chancery Rule 59(f), and because the Petitioner did not file such a motion, asks that I decline to reconsider the issue here.[2] However, I find this matter within the scope of the computational errors about which I requested commentary, on a schedule that would preclude a motion for reargument. Therefore, I think application of a mid-year convention is appropriately considered here.

The utility of a mid-year convention for determining the present value of an entity based on projected cash flows is relatively easy to conceptualize. Consider the present value of a sum to be received in the next year. If the money is to be paid at the end of twelve months, an annual discount rate should be multiplied by the sum to be received to calculate present value. Now assume that the same amount is to be paid ratably in monthly payments, starting next month. Applying the full annual discount rate would clearly understate the present value of the income. The same problem exists with calculating the present value of income in a discounted cash flow analysis, which does nothing more than reduce to present

---

[2] *See* Resp't's May 30, 2014 Letter at 2; Resp't's Response to Proposed Computational Corrections at 3; Kimball Aff. ¶ 34.

2

value a series of yearly income streams: if income occurs throughout the year, applying a discount rate as though income were received only in month twelve understates value.[3]

In the instant case, management projections were not available and the experts simply calculated a present value based on capitalization of historic income. The Petitioner suggests that, in failing to use the mid-year convention, I have understated the value of Hesco, according to the Petitioner's expert by $23.00 per share. As discussed above, because the valuation in my May 12 Memorandum Opinion did not discuss (because I failed to consider) whether a mid-year convention should be applied, it is appropriate that I do so here. A mid-year convention is applicable where sufficient evidence exists to support a reasonable assumption that income is either constant over time or likely to occur randomly throughout the year.[4] Here, the parties have submitted no direct evidence

---

[3] *See* Pet'r's Proposed Computational Corrections at 2 n.1 ("[A]ppraisers generally recognize that cash flows are not necessarily received at the end of each year. Rather, the available cash flow generated by the enterprise may be withdrawn . . . on a daily, weekly, or monthly basis, or at any other time that such cash flow becomes available. Because the timing of cash flow fluctuates over the course of a year, [t]he mid-year convention has the effect of understating the present value of cash flows received early in the year and overstating the value of cash flows received at the end of the year, with the intent that these 'errors' will average out and provide a more accurate calculation of value.") (citations omitted); Kimball Aff. ¶ 44 ("[C]ash received early in the year will be over-discounted (*i.e.*, treated as if received several months later than it actually was), but cash received later in the year will be under-discounted (*i.e.*, treated as if received several months earlier than it actually was).").

[4] *See* Pet'r's Proposed Computational Corrections Ex. A at 180; Pet'r's Reply at 4-6.

indicating when Hesco is most likely to generate income.[5]  However, the parties have submitted abundant evidence demonstrating the random and unpredictable nature of the episodic events—natural disasters and the like—that cause demand for Hesco products.[6]  The Petitioner points out that one such disaster or threat of damage driving Hesco's sales is river flooding, which she explains tends to occur in the spring months.  While I can take judicial notice of that fact, I must also take judicial notice of the equally self-evident proposition that hurricanes—another driver of Hesco sales—typically occur in late summer and fall.  However, I conclude that the random nature of the sales of Hesco products, based on the occurrence of such threats of disaster or loss, makes it reasonable to assume that income will be distributed throughout the year, making the mid-year presumption applicable.[7]

In a direct capitalization of cash flow calculation (as opposed to a more traditional discounted cash flow analysis), an assumption is made that income will grow at a constant rate, and that growth is subtracted from the cost of capital to

---

[5] *See* Resp't's Response to Proposed Computational Corrections at 5 (describing the "wide variance Hesco experienced in monthly sales in 2009, 2010, and 2011"); Kimball Aff. Ex. A.

[6] *See* Resp't's Response to Proposed Computational Corrections at 4 ("The testimony at trial was uniform from both sides that Hesco is in fact subject to seasonal fluctuations.  Hesco's business depends on floods and other natural disasters that vary in frequency and intensity depending on seasonal weather patterns.").

[7] To clarify, to the extent the Respondent argues that "the decision to use a mid-year convention as opposed to an end-period convention is a subjective decision open to an appraiser's discretion under appropriate circumstances," *id.* at 2, I find it appropriate to exercise my discretion to employ the mid-year convention here.

produce a present value for each future year, which, if graphed, would produce a straight line representing a constant downward-trending present value for each successive year. The calculation required is one to determine the present value of each future year's mid-point (rather than end) on that slope. Based upon the calculation in my May 12 Memorandum Opinion, which did not rely on the mid-year convention, I found that the fair value per share of Hesco, as of the valuation date, was $364.24. The Petitioner's expert has applied the mid-year convention in the manner described above, which implied a value per share of $387.24.[8] While the Respondent has vigorously disputed that it is appropriate to apply a mid-year convention to my direct capitalization of cash flow calculation, it has not disputed the mathematical accuracy of the adjustment made by the Petitioner's expert, assuming that I find a mid-year convention appropriate.[9] I therefore adopt that adjustment here.

For the foregoing reasons, I find that it is appropriate to apply a mid-year convention here. Therefore, for the reasons stated in this Letter Opinion and in my May 12, 2014 Memorandum Opinion, I find that the fair value of the Petitioner's

---

[8] *See* Pet'r's Proposed Computational Corrections at 1 ("In the Court's May 12, 2014 Memorandum Opinion, this court held that, for her shares, Petitioner Patricia Laidler is entitled to the fair value of $364.24 per share plus interest at the statutory rate. . . . When this correction is made, the value of Ms. Laidler's shares should be increased by $23.00 per share.").
[9] I decline to accept the Respondent's invitation to reconsider the weight I accorded to actual revenues in 2009, 2010, and 2011 in calculating normalized EBITDA, as I explicitly addressed that issue in my May 12, 2014 Memorandum Opinion.

interest in Hesco as of the valuation date was $387.24 per share.  An appropriate

Order is attached.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III
